EXHIBIT 5

LAW OFFICES OF

ERNEST H. GELMAN

45 Rockefeller Plaza - Suite. 2452
New York, NY 10111
Tel: (212) 332-2345
Fax: (212) 332-8301
Email: egelman@gelmanesq.com

OF COUNSEL
ANN L. CHUSID

March 24, 2005

Via Federal Express

Seamount International Association Ltd.
c/o Scan-Trans, Inc.
2500 Tanglewilde
Suite 498
Houston, TX 77073
Attn: President

Re: K+N/Seamount Arbitration

Dear Sir:

We are attorneys for KN Servicos de Logistica Ltda, a/k/a Kuehne + Nagel Ltda., Kuehne +Nagel S.A. and Transpac Container Services, Ltd. d/b/a Blue Anchor Line (collectively "K+N").

Pursuant to Clause 38 of the Liner Booking Note of Seamount International Association Ltd. dated December 10, 2003, we hereby commence arbitration on behalf of these clients against Seamount under the Rules of the Society of Maritime Arbitrators, Inc.

The nature of the arbitration concerns damages to the cargo Seamount shipped pursuant to the Liner Booking Note. K+N seek damages in the amount of at least US $178,142 and a declaration that Seamount shall hold K+N harmless from any potential remedy sought by the owner of the goods that were shipped pursuant to the Liner Booking Note, and related documents.

We offer the following three individuals as a sole arbitrator

Harold J. Halpin
Lamorte Burns & Co., Inc.
64 Danbury Road
Wilton, CT 06897
Tel: (203) 761-6000
Fax: (203) 761-6007

David W. Martowski
91 Central Park West
New York, NY 10023
Tel: (212) 579-6224
Fax: (212) 579-6277

Lloyd C. Nelson
c/o Orion & Global Chartering Co., Inc.
29 Broadway
New York, NY 10006
Tel: (212) 943-7733
Fax: (212) 797-9412

Please select one of these individuals. If you cannot accept any of these individuals, please advise us of any three arbitrators on the Roster of the Society that you would accept.

We await your response.

Very truly yours,

Ernest H. Gelman

# LINER BILL OF LADING

B/L Nº 1

Reference Nº

Shipper
NV SERVICOS DE LOGISTICA LTDA
AV. BRIG. FARIA LIMA, 2006-6º ANDAR
01451-905 SAO PAULO - SP CNP J 02.886.427/001-64
AS AGENT OF BLUE ANCHOR LINE

Consignee
KUEHNE & NAGEL S.A.
AV. CARLOS GONZALES 212
SAN MIGUEL - LIMA PERU
AS AGENT OF BLUE ANCHOR LINE

Notify address
KUEHNE & NAGEL S.A.
AV. CARLOS GONZALES 212
SAN MIGUEL - LIMA PERU
AS AGENT OF BLUE ANCHOR LINE

Pre-carriage by* | Place of receipt by pre-carrier*

Vessel GLOBAL TRAVELLER 1 | Port of loading

Port of discharge SANTOS-SP/BRASIL | Place of delivery by on-carrier* CALLAO

ORIGINAL

| Marks and Nos | Number and kind of packages; description of goods | Gross weight | Measurement |
|---|---|---|---|
| AMBEV BRASIL<br>FCL/FCL | EQUIPOS, MAQUINARIAS Y MATERIALES<br>PARA PLANTA DE INDUSTRIA CERVECERA<br>CARGA SUELTA<br>469 PIECES<br>21 CNTR'S COMO CONTENEDORES DE 40'DV SAID TO CONTAIN<br>SHIPPERS LOAD STOW COUNT COMO SIGUE:<br>SHIPPERS OWN CONTAINER WITH | 1,225,130,05 | 12,947.640cbm |
| GSTU 734162-1<br>Seal BK 006637 | 40'DV SHIPPER'S OWN CONTAINER WITH<br>69 VOLS | 26.490,00 | |
| GSTU 738015-9<br>Seal BK 006668 | 40'DV SHIPPER'S OWN CONTAINER WITH<br>509 VOLS | 17.575,00 | |
| INBU 466069-7<br>Seal BK 006629 | 40'DV SHIPPER'S OWN CONTAINER WITH<br>31 VOLS | 17.575,00 | |

Particulars furnished by the Merchant

Freight details, charges etc.

MV. GLOBAL TRAVELLER

Daily demurrage rate (additional Clause A)

**SHIPPED** on board in apparent good order and condition, weight, measures, marks, numbers, quality, contents and value unknown, for carriage to the Port of Discharge or so near thereunto as the Vessel may safely get and be always afloat, to be delivered in the like good order and condition at the aforesaid Port unto Consignees or their Assigns, they paying freight as indicated to the left plus other charges incurred in accordance with the provisions contained in this Bill of Lading. In accepting this Bill of Lading the Merchant expressly accepts and agrees to all its stipulations on both pages, whether written, printed, stamped or otherwise incorporated, as fully as if they were all signed by the Merchant.

One original Bill of Lading must be surrendered duly endorsed in exchange for the goods or delivery order.

IN WITNESS whereof the Master of the said Vessel has signed the number of original Bills of Lading stated below, all of this tenor and date one of which being accomplished, the others to stand void.

* Applicable only when document used as a Through Bill of Lading

Freight payable at | Place and date of issue SANTOS 27-03-04

Number of original B/s/L THREE (03) | Signature

IAN TAYLOR Y CIA S.A.C.
SHIPPING AGENT

Printed by ... Authorized by ... Copenhagen ... Secretary of The Baltic and International Maritime Conference, (BIMCO), Copenhagen.

FROM : RIBEIRO FILHO & ASSOCIADOS FAX NO. 2122330202 Jan. 29 2004 02:10PM P2

"CONLINEBOOKING"
LINER BOOKING NOTE

FIRST ORIGINAL

| | |
|---|---|
| 1. Agents - Shipbrokers<br>Narval Shipping & Services Ltda. of Rio de Janeiro Brazil. | 2. Place and date<br>Rio de Janeiro, December,10th, 2003 |
| 3. Carrier<br>Seamount International Association Ltd.<br>C/o Scan-Trans, | 4. Merchant (see Clause 1)<br>Kuehne & Nagel Ltda.<br>São Paulo / Brazil |
| 5. Vessel's name<br>MV Global Traveller | 6. Time for shipment (about)<br>Laydays : 25th February / 05th March, 2004. |
| 7. Loading port (or so near thereunto as the vessel may safely get and lie always afloat)<br>Saboo Berth at Santos, Brazil. | 8. Discharging port<br>Callao / Peru, Carriers' berth. |

9. Description of goods

Minimum 14,000 cbm and and no upper limit but of course only upto vessels full capacity and subject to Masters approval of stowage. Final packing list to be supplied 10 days prior vessel's arrival by Charterers.

| | |
|---|---|
| 10. Freight rate (also indicate whether prepayable or payable at destination)<br>Break-Bulk cargo: US$ 45.00 per w/m and usd 1,000.00 per 40' socs up (limited) to 20 units basis full liner terms hook/hook. | 11. Demurrage rate (if agreed)<br>US$ 10,500.00 per day or pro rata as detention for lack of cargo, cleared documents and/or trucks alongside vessel, both ends. Cargo the be delivered under vessels hook as fast as vessel can receive and to be delivered under vessel's hook at discharge port as fast as vessel can deliver. If this is not happening, Damages for detention to apply. |

12. Merchant's representatives at loading port (state full name and address, telegraphic address, telephone and telex)

13. Special terms, if agreed

Additional clauses 20 up to 43 are to be deemed incorporated in this Booking Note.

It is hereby agreed that this Contract shall be performed subject to the terms contained on Page 1 and 2 hereof which shall prevail over any previous arrangements and which shall in turn be superseded (excepted as to deadfreight and demurrage) by the terms of the Bill of Lading, the terms of which (in full or extract) are found on the reverse side hereof.

| | |
|---|---|
| Signature (Carrier)<br>Scan-Trans, Inc., Houston / U.S.A.<br>As Agents only<br>"FOR AND ON BEHALF OF CARRIERS" | Signature (Merchant)<br>Kuehne & Nagel Ltda. / São Paulo, Brazil |

Message Continues...

Page:3 Case 1:06-cv-05648-LTS Document 5-6 Filed 07/28/2006 Page 6 of 9

FROM RIBEIRO FILHO & ASSOCIADOS FAX NO. 2122330202 Jan. 29 2004 02:11PM P3

[illegible] NO. [illegible] 29 JAN. 2004 P2

# FULL TERMS OF THE CARRIER'S BILL OF LADING FORM

Page 1

Definition
Wherever the term "Merchant" is used in this Bill of Lading, [illegible] shall be deemed to include the Shipper, the Receiver, the Consignee, the Holder of the Bill of Lading and the Owner of the cargo.

2. General Paramount Clause
The Hague Rules contained in the International Convention for the unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of destination shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of the said Convention shall apply.
[illegible] payable to the Master as soon as the charges have been incurred.
Interest at 5 per cent. shall run from the date when freight and charges are due.
Trades where Hague-Visby Rules apply
In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968 - The Hague-Visby Rules - apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in the charge of another Carrier, and to deck cargo and live animals.

3. Jurisdiction.
Any dispute arising under this Bill of Lading shall be decided in the country where the Carrier has his principal place of business, and the law of such country shall apply except as provided elsewhere herein.

4. Period of Responsibility
The Carrier or his Agent shall not be liable for loss of or damage to the goods during the period before loading and after discharge from the vessel, howsoever such loss or damage arises.

5. The Scope of Voyage
As the vessel is engaged in [illegible] the [illegible] voyage shall not be limited to the direct route but shall be deemed to include any proceeding or returning to or stopping or slowing down at or off any ports or places for any reasonable purpose connected with the service including maintenance of vessel and crew.

6. Substitution of Vessel, Transhipment and Forwarding.
Whether expressly arranged beforehand or otherwise, the Carrier shall be at liberty to carry the goods to their port of destination by the said or other vessel or vessels either belonging to the Carrier or others, or by other means of transport proceeding either directly or indirectly to such port and to carry the goods or part of them beyond their port of discharge, and to tranship, land and store the goods either on shore or afloat and reship and forward the same at Carrier's expense but at Merchant's risk. When the ultimate destination at which the Carrier may have engaged to deliver the goods is other than the vessel's port of discharge, the Carrier acts as Forwarding Agent only.
The responsibility of the Carrier shall be limited to the part of the transport performed by him on vessels under his management and no claim will be acknowledged by the Carrier for damage or loss arising during any other part of the transport even though the freight for the whole transport has been collected by him.

7. Lighterage
Any lightering in or off ports of loading or ports of discharge to be for the account of the Merchant.

8. Loading, Discharging and Delivery.
[illegible] of the cargo shall be arranged by the Carrier's Agent unless otherwise agreed.
Landing, storing and delivery shall be for the Merchant's account.
Loading and discharging may commence without previous notice.
The Merchant or his Assign shall tender the goods when the vessel is ready to load and as fast as the vessel can receive and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be relieved of any obligation to load such cargo and the vessel may leave the port without further notice and deadfreight is to be paid.
The Merchant or his Assign shall take delivery of the goods and continue to receive the goods as fast as the vessel can deliver and - but only if required by the Carrier - also outside ordinary working hours notwithstanding any custom of the port. Otherwise the Carrier shall be at liberty to discharge the goods and any discharge to be deemed a true fulfilment of the contract, or alternatively to act under Clause 16.
The Merchant shall bear all overtime charges in connection with tendering and taking delivery of the goods as above.
If the goods are not applied for within a reasonable time, the Carrier may sell the same privately or by auction.
The Merchant shall accept his reasonable proportion of unidentified loose cargo.

9. Live Animals and Deck Cargo
shall be carried subject to the Hague Rules as referred to in Clause 2 hereof with the exception that notwithstanding anything contained in Clause 19 the Carrier shall not be liable for any loss or damage resulting from any act, neglect or default of his servants in the management of such animals and deck cargo.

[illegible] discharge not later than [illegible] hours before the vessel's arrival there. In the absence of such declaration the Carrier may elect to discharge at the first or any other optional port and the contract of carriage shall then be considered as having been fulfilled. Any option can be exercised for the total quantity under this Bill of Lading only.

11. Freight and Charges
(a) Prepayable freight, whether actually paid or not, shall be considered as fully earned upon loading and non-returnable in any event. The Carrier's claim for any charges under this contract shall be considered [illegible] handling of the cargo for any of the aforementioned reasons.
(b) The Merchant shall be liable for expenses of fumigation and of gathering and sorting loose cargo and of weighing onboard and expenses incurred in repairing damage to and replacing of packing due to excepted causes and for all expenses caused by extra handling of the cargo for any of the aforementioned reasons.
(c) [illegible] optional ports [illegible] than 48 hours before the vessel's arrival there. In the absence of such declaration the Carrier may elect to discharge at the first or any other optional port and the contract of carriage shall then be considered as having been fulfilled. Any option can be exercised for the total quantity under this Bill of Lading only.
(d) Any dues, duties, taxes and charges which under any denomination may be levied on any basis such as amount of freight, weight of cargo or tonnage of the vessel shall be paid by the Merchant.
(e) The Merchant shall be liable for all fines and or losses which the Carrier, vessel or cargo may incur through non-observance of Custom House and/or import or export regulations.
(f) The Carrier is entitled in case of incorrect declaration of contents, weights, measurements or value of the goods to claim double the amount of freight which would have been due if such declaration had been correctly given. For the purpose of ascertaining the actual facts, the Carrier reserves the right to obtain from the Merchant the original invoice and to have the contents inspected and the weight, measurement or value verified.

12. Lien
The Carrier shall have a lien for any amount due under this contract and costs of recovering same and shall be entitled to sell the goods privately or by auction to cover any claims.

13. Delay.
The Carrier shall not be responsible for any loss sustained by the Merchant through delay of the goods unless caused by the Carrier's personal gross negligence.

14. General Average and Salvage.
General Average to be adjusted at any port or place at Carrier's option and to be settled according to the York-Antwerp Rules 1974. In the event of accident, danger, damage or disaster before or after commencement of the voyage resulting from any cause whatsoever, whether due to negligence or not, for which or for the consequence of which the Carrier is not responsible by statute, contract or otherwise, the Merchant shall contribute with the Carrier in General Average to the payment of any sacrifice, losses or expenses of a General Average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods. If a salving vessel is owned or operated by the Carrier, salvage shall be paid for as fully as if the salving vessel or vessels belonged to strangers.

15. Both-to-Blame Collision Clause. (This clause to remain in effect even if unenforceable in the Courts of the United States of America).
If the vessel comes into collision with another vessel as a result of the negligence of the other vessel and any act, neglect or default of the Master, Mariner, Pilot or the servants of the Carrier in the navigation or in the management of the vessel, the Merchant will indemnify the Carrier against all loss or liability to the other or non-carrying vessel or her Owner in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owner of the said goods paid or payable by the other or non-carrying vessel or her Owner to the Owner of said cargo and set off, or recouped or recovered by the other or non-carrying vessel or her Owner as part of his claim against the carrying vessel or Carrier. The foregoing provisions shall also apply where the Owner, operator or those in charge of any vessel or vessels or objects other than, or in addition to, the colliding vessels or objects are at fault in respect of a collision or contact.

16. Government directions, War, Epidemics, Ice, Strikes, etc.
(a) The Master and the Carrier shall have liberty to comply with any order or directions or recommendations in connection with the transport under this contract given by any Government or Authority, or anybody acting or purporting to act on behalf of such Government or Authority, or having under the terms of the insurance on the vessel the right to give such orders or directions or recommendations.
(b) Should it appear that the performance of the transport would expose the vessel or any goods onboard to risk of seizure or damage or delay, resulting from war, warlike operations, blockade, riots, civil commotion or piracy, or any person onboard to the risk of loss of life or freedom, or that any such risk has increased, the Master may discharge the cargo at port of loading or any other safe and convenient port.
(c) Should it appear that epidemics, quarantine, ice - labour troubles, labour obstructions, strikes, lockouts, any of which onboard or on shore - difficulties in loading or discharging would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and departing therefrom, all of which safely and without delay, the Master may discharge the cargo at port of loading or any other safe and convenient port.
(d) The discharge under the provisions of this clause of any cargo for which a Bill of Lading has been issued shall be deemed due fulfilment of the contract. If in connection with the exercise of any liberty under this clause any extra expenses are incurred, they shall be paid by the Merchant in addition to the freight, together with return freight if any and a reasonable compensation for any extra services rendered to the goods.
(e) If any situation referred to in this clause may be anticipated, or if for any such reason the vessel cannot safely and without delay reach or enter the loading port or must undergo repairs, the Carrier may cancel the contract before the Bill of Lading is issued.
(f) The Merchant shall be informed if possible.

17. Identity of Carrier
The Contract evidenced by this Bill of Lading is between the Merchant and the Owner of the vessel named herein (or substitute) and it is therefore agreed that said shipowner only shall be liable for any damage or loss due to any breach or non-performance of any obligation arising out of the contract of carriage, whether or not relating to the vessel's seaworthiness. If, despite the foregoing, it is adjudged that any other is the Carrier and/or bailee of the goods shipped hereunder, all limitations of, and exonerations from, liability provided for by law or by this Bill of Lading shall be available to such other.
It is further understood and agreed that as the Line, Company or Agents who has executed this Bill of Lading for and on behalf of the Master is not a principal in the transaction, said Line, Company or Agents shall not be under any liability arising out of the contract of carriage, nor as Carrier nor bailee of the goods.

18. Exemptions and Immunities of all servants and agents of the Carrier.
It is hereby expressly agreed that no servant or agent of the Carrier (including every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant for any loss, damage or delay arising or resulting directly or indirectly from any act, neglect or default on his part while acting in the course of or in connection with his employment and, but without prejudice to the generality of the foregoing provisions in this clause, every exemption, limitation, condition and liberty herein contained and every right, exemption from liability, defence and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled hereunder shall also be available and shall extend to protect every such servant or agent of the Carrier acting as aforesaid and for the purpose of all the foregoing provisions of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servant or agent of the Carrier acting as aforesaid and for the purpose of all the foregoing provisions of this clause the Carrier is or shall be deemed to be acting as agent or trustee on behalf of and for the benefit of all persons who are or might be his servants or agents from time to time (including independent contractors as aforesaid) and all such persons shall to this extent be or be deemed to be parties to the contract evidenced by this Bill of Lading.
The Carrier shall be entitled to be paid by the Merchant on demand any sum recovered or recoverable by the Merchant or any other from such servant or agent of the Carrier for [illegible]

19. Optional Stowage. Unitization.
(a) Goods may be stowed by the Carrier as received, or at Carrier's option, by means of containers, or similar articles of transport used to consolidate goods.
(b) Containers, trailers and transportable tanks, whether stowed by the Carrier or received by him in a stowed condition from the Merchant, may be carried on or under deck without notice to the Merchant.
(c) The Carrier's liability for cargo stowed as aforesaid shall be governed by the Hague Rules as defined above notwithstanding the fact that the goods shall contribute in general average and shall receive compensation in general average.

ADDITIONAL CLAUSES
(To be added if required in the contemplated trade)

A. Demurrage.
The Carrier shall be paid demurrage at the daily rate per ton of the vessel's gross register tonnage as indicated on Page 2 if the vessel is not loaded or discharged with the dispatch set out in Clause 8, any delay in waiting for berth at or off port to count.
Provided that if the delay is due to causes beyond the control of the Merchant, 24 hours shall be deducted from the time on demurrage.
Each Merchant shall be liable towards the Carrier for a proportionate part of the total demurrage due, based upon the total freight on the goods to be loaded or discharged at the port in question.
No Merchant shall be liable in demurrage for any delay arising only in connection with goods belonging to other Merchants.
The demurrage in respect of each parcel shall not exceed its freight.
(This Clause shall only apply if the Demurrage Box on Page 2 is filled in).

B. U.S. Trade, Period of Responsibility
In case the Contract evidenced by this Bill of Lading is

Message Continues...

# BOOKING NOTE RIDER.

10 Options.
The port of discharge for optional cargo must be declared to the vessel's Agents at the first of the

would prevent the vessel from leaving the port of loading or reaching or entering the port of discharge or there discharging in the usual manner and leaving again, all of which

subject to the U.S. Carriage of Goods by Sea Act, then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the goods are in the Carriers' custody

(*) LINER BILL OF LADING
(Liner terms approved by The Baltic and International Maritime Conference)
Code Name: "CONLINEBILL"
Amended [illegible], 1950, August 1st, 1952, January 1st, 1950, July 1st, 1974, August 1st, 1976, January 1st, 1978.

Message Continues...

BOOKING NOTE RIDER.

20. TERMS whereby cargo to be delivered / received alongside directly under vessels hook at risk and expense of merchants

21. PACKAGING: Cargo to be suitable packed considering used material / crated for ocean transportation and fitted with suitable lifting / slinging / lashing points and known center of gravity.

22 LIFTING EQUIPMENT OR GEAR: Any lifting frames and/or spreader bars and dunnage required to be supplied by Carriers.

23. SUPPORT EQUIPMENT AND HANDLING MARKS: The Merchants shall supply any saddles/cradles, which may be required to support the cargo.

24. CARGO DELIVERY/RECEIVING: At the load port or discharge port, if cargo is delivered or received directly under hook by trucks, railwagons or lighters the cargo shall be delivered or received as fast as the ship is able to load or discharge otherwise demurrage/detention to apply.

25. DETENTION: Any delays to the vessel beyond carrier's control to be deemed vessel detention rate of US 10,500.00 per day pro-rata, to be applied in case of any time lost in waiting for cargo, documents, trucks, barges, railcars, at Loading or Discharging Port (s).

26. MEASUREMENT: All cargoes to be measured at the extremes for the purpose of calculating cargo cubic. Carrier's surveyor may measure and/or weigh the cargo to determine measure and weight. Carrier's measure and weight (which can be taken from terminal's receiving report) to be used for purposes of calculating freight charges.

27. STOWAGE; Cargo to be stowed on / under deck in carriers' option. Cargo carried on deck at Merchants risk and expenses and bills of lading to be claused accordingly. Cargo to go partly stackable.

28. SECURING: Cargo to be secured to vessel Master's satisfaction. The time and expense of additional securing required by the merchant or merchant's surveyor beyond that required by the Master shall be for the cargo interests account.

29 FREIGHT EARNED: Freight is deemed earned upon completion of loading, discountless and non-returnable, ship and/or cargo lost or not lost.

30. PAYMENT TERMS: 100% payable abroad within 3 (three) banking days into carriers nominated bank account in Denmark. B/Ls to be shown "Freight payable as per Booking Note less 2.50% commission".

31. EXCLUDED CHARGES: Any truck unloading/loading, THC, other terminal charges, wharfage, dues, duties and taxes on cargo and/or freight to be for merchant's account at both ends.

32. B/L TERMS: Subject to all terms and conditions of carrier's bill of lading.

33. PRIVATE & CONFIDENTIAL: All parties consider this agreement as private and confidantial.

34 ALTERATIONS: Any changes or alterations to this booking must be confirmed in writing by both the merchant (and his representative) and the carrier.

35. FULL OR PART CARGO: Carriers will load this as a full and sole cargo and carriers will load all cargo as presented on the packing list.

36. UPDATES: Carrier to provide weekly updates by e-mail to Kuehne & Nagel - São Paulo, of vessel's position after sailing first load port until arrival at discharge port. All up dates subject to weather permitting, all going well, unforeseen circumstences excepted, without guarantee. Carriers will provide K&N with the Oceanwatch Service, free of charge. This service will enable Merchants to log on the internet 24 / 7 and follow the vessel's movement, eta's, weather conditions, etc.

37. AGENTS/STEVEDORING: Carrier's agents both ends.

38. ARBIRTRATION: Any dispute arising under this booking note and bills of lading shall be referred to arbitration in New York in accordance with rules for arbitration procedures of the Society of Maritime Arbitrators Inc. In New York.

39. TAXES AND EXPENSES : All taxes/dues/duties on cargo and/or freight or calculated on same, to be for Merchants account. TUP (Port Utilization Tax) by carrier's account.

Message Continues...

## BOOKING NOTE RIDER.

40. LASHING OF CARGO: Cargo to be fitted with suitable lifting lugs or other adequate means of lifting and center of gravity to be clearly indicated. Sufficient lashing points for securing to be placed on the cargo. If items are not flat at their bottoms then a footprint sketch is requested; cargo to be suitably packed for ocean transportation. Any blocking and / or trapping dues to be for Charterers account. Lashing and securing for Carriers' account.

41. VESSEL'S DESCRIPTION :

Mv "Global Traveller":
Call Sign : V2SP
IMO No. : 2693
Flag : Antigua @ Barbuda
Class : GL 100 A5 E MCE AUT 16/24 Great Lakes fitted.
Loa : 123.42 m
Beam : 20.84 m
Summer draft : 7.75 m
Built : 1982
Deadweight (SSW) : 9.800 MT
Grain / Bale space: 11,853 / 11,142 m3
Tank Top: 1.163m2
Tween deck: 1,204 m2
Weather Deck: 1,520 m2 (88.40 x 15.70 M / 25.6 M sloping 3.8o. to ramp)
Hatches: Weather deck : 72.77 x 15.20 M / Tween deck: 72.77 x 15 20 M
Derricks: 2 x 100 motn SWL / Aux hook: 2 x 5 mtons SWL (on H/L derrick)
Ramp Position : Stern / Dimensions: 15.00 x 7.00 M / Capacity. 400 Mton
Container Fitted
All about.

42 FREIGHT REDUCTION :

Owners accept to give Charterers a freight discount of US$ 27,500.00 in view of a sole call i.e. Santos as loading port.

43 . SURVEY OF THE CARGO :

A joint measurement survey to be done prior to the loading operation which the cost of it to be equally splited between the parties.

END OF CLAUSES

Signature (Carriers)
Scan-Trans, Inc.
on behalf of Carriers
as Agent only.

Signature (Merchants)
Kuhne & Nagel Ltda.

-------------- End of Message --------------